**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 03-1648

FRANK KUMAH,

Petitioner,

v.

JOHN ASHCROFT,
UNITED STATES ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, Chief Judge,

Selya and Lynch, Circuit Judges.

Saher J. Macarius and Law Offices of Saher J. Macarius on brief for petitioner.
Peter D. Keisler, Assistant Attorney General, Office of Immigration Litigation, Civil Division, Department of Justice, David V. Bernal, Assistant Director, Office of Immigration Litigation, Civil Division, Department of Justice, and Russell J.E. Verby, Office of Immigration Litigation, Civil Division, Department of Justice, on brief for respondent.

July 14, 2004

Per Curiam.  Frank Kumah is a native of Ghana who entered the United States without permission in January 1994.  In March 1999, the Immigration and Naturalization Service ("INS"), as it was then known, began removal proceedings.  Kumah requested asylum based on an application and supporting affidavit that he had filed in September 1994.

In April 2000, a hearing on Kumah's asylum application was held at which he testified.  In substance, he said that in 1992 he had become an organizer and regional secretary for the New Patriotic Party, in opposition to the military government under Jerry John Rawlings.  Kumah participated in rallies and then, after the November 1992 elections which Rawlings won, in protests which were dispersed with violence.  Kumah said that in December 1992 he attended an evening party meeting in a school building and was then arrested by police along with others and held for 12 days in bad conditions.

Kumah also testified that after 12 days, he escaped during a transfer to another prison, hid in the house of a friend who helped him to escape from the country and then after about a year arrived in the United States.  A written statement from the friend was offered stating that Kumah had arrived at his house after detention, but giving the date of arrival as one day after the date that Kumah gave for his arrest.  Based on this and certain

-2-

other discrepancies, the immigration judge found Kumah's testimony not credible and denied the asylum application.

The Board of Immigration Appeals ("Board") affirmed without opinion pursuant to 8 C.F.R. § 1003.1(a)(7) (2004). Kumah now seeks review in this court. On review, the immigration judge's decision must stand if supported by substantial evidence, see Albathani v. INS, 318 F.3d 365, 372 (1st Cir. 2003); and credibility judgments are ordinarily respected so long as the immigration judge has "a specific, cogent reason for . . . disbelief." Qin v. Ashcroft, 360 F.3d 302, 306 (1st Cir. 2004) (quoting earlier precedents).

We think the credibility determination is sufficiently supported, although just barely so. The immigration judge pointed to a set of specific discrepancies including the unexplained conflict in dates, inconsistent statements by Kumah himself as to whether he was handcuffed on his arrest, and a supposed (although debatable) discrepancy as to whether Kumah was arrested inside the building or out. This is some, but hardly overwhelming, evidence tending to discredit.

There might have been a misrecollection as to dates or even a typographical error in the friend's statement, although Kumah offered the statement along with his own testimony and was free to explain the fairly obvious discrepancy. Whether Kumah was handcuffed or not is a contradiction a little harder to explain but

is more of a detail than a central question like how long Kumah was in custody. As to the issue of whether he was arrested inside or outside the building, Kumah did explain why there should be no inference of a contradiction although the immigration judge was not compelled to accept the explanation. Nevertheless, these are not details unrelated to the main story of persecution, and the immigration judge did have the advantage of watching the witness testify.

If the immigration judge disbelieved Kumah as to central incidents, he was permitted, although not compelled, to disbelieve the basic story. See Qin, 360 F.3d at 308; Yongo v. INS, 355 F.3d 27, 33 (1st Cir. 2004). This is so even though there was background evidence as to conditions in Ghana in the early 1990s making it clear that Kumah's party was the subject of harassment by the Rawlings government and that there were arrests of party supporters. On a cold record, the immigration judge's result is somewhat surprising, but it is explained; the explanation is not fanciful or unsupported by the record and some deference is due immigration judges who not only see the witness but handle the very large number of similar cases.

There is a hint in the immigration judge's decision that he did not regard the claim of past persecution as very powerful even if Kumah's description were true. Although Kumah claimed to have been beaten several times during the breakup of rallies, such

random and anonymous brutality would not likely justify a fear of future persecution for an individual; and the only violence that Kumah described in prison was that he was beaten for refusing to do assigned work on the prison farm. He testified that he understands that there is now a warrant out for his arrest, but there is no clear indication whether it is for political crimes or merely for escaping from prison.

The background information as to events in Ghana which is part of the record suggests that by the time of the hearing in 2000, political repression in Ghana had somewhat lessened and Kumah's party had minority representation in Parliament, although some abuses apparently continued. However, the immigration judge did not rely upon changed circumstances but instead rejected Kumah's story based on inconsistencies; and it is on this latter basis that we uphold the result.

Kumah makes several other claims of error, but only two require brief comment. First is the assertion that administrative law principles required the Board to give reasons for its summary affirmance. This argument has already been rejected by other panels of this court. Yongo, 355 F.3d at 34-35; Albathani, 318 F.3d at 377-78. Finally, we reject Kumah's contention that affirmance without opinion in his case was improper under 8 C.F.R. § 1003.1(a)(7)(ii). Assuming arguendo that the Board's decision to affirm without opinion in particular matters is separately

reviewable, this case is a fact-specific credibility matter and involved no new legal issues.

The petition for review is <u>denied</u>.